UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------x

JOHN D'AMORE,

                    Plaintiff,

        - against -

CITY OF NEW YORK,

                    Defendant.

---------------------------------------------------------x

**MEMORANDUM & ORDER**

17-CV-1748 (PKC) (ST)

PAMELA K. CHEN, United States District Judge:

Plaintiff John D'Amore ("Plaintiff") brings this action against Defendant City of New York ("Defendant"), advancing retaliation claims under Title VII of the Civil Rights Act of 1964 ("Title VII"), New York State Human Rights Law ("NYSHRL"), and New York City Human Rights Law ("NYCHRL"), based on alleged complaints of gender discrimination. Defendant moves for summary judgment on all of Plaintiff's claims. For the following reasons, the Court grants Defendant's motion for summary judgment in its entirety.

## BACKGROUND

### I.    Facts

Plaintiff was employed as a Provisional Investigator within the Investigation Division of the New York City Department of Corrections ("DOC") from April 11, 2016 until April 28, 2016. (Defendant's 56.1 Statement ("Def.'s 56.1"), Dkt. 29, ¶ 3.)[1] At the time of Plaintiff's employment

---

[1] Unless otherwise noted, a standalone citation to a party's 56.1 statement denotes that this Court has deemed the underlying factual allegation undisputed. Any citation to a party's 56.1 statement incorporates by reference the documents cited therein. Where relevant, however, the Court may cite directly to the underlying document. The Court has deemed facts averred in a party's 56.1 statement to which the opposing party cites no admissible evidence in rebuttal as undisputed. *See Lumbermens Mut. Cas. Co. v. Dinow*, No. 06-CV-3881 (TCP), 2012 WL 4498827, at *2 n.2 (E.D.N.Y. Sept. 12, 2012) ("Eastern District Local Rule 56.1 requires . . . that disputed facts be *specifically* controverted by admissible evidence. Mere denial of an opposing party's statement or denial by general reference to an exhibit or affidavit does not specifically

with DOC, the DOC's Investigation Division was responsible for, *inter alia*, the timely investigation of any allegation against staff or inmates involving sexual assault. (Def.'s 56.1, ¶ 4.) On April 26, 2016, Plaintiff was initially assigned to the George Motchan Detention Center ("GMDC") investigative team, which is stationed at the headquarters of DOC's Investigation Division in East Elmhurst, New York ("Headquarters"). (*Id.* ¶ 6; Deposition of Michael Bardales ("Bardales Dep."), Dkt. 33-9, at ECF[2] 402.) However, on April 27, 2016, Plaintiff was reassigned to the George R. Vierno Center ("GRVC") investigative team, which is stationed on Rikers Island. (Defs.' 56.1, ¶ 6; Bardales Dep., Dkt. 33-9, at ECF 402.) Specifically, Plaintiff was called into a meeting with Michael Bardales, Deputy Director of Investigation for DOC's Investigation Division, who informed Plaintiff that an additional male investigator was needed at GRVC in order to handle male inmates' complaints of sexual harassment and assault. (Def.'s 56.1, ¶ 5; Plaintiff's 56.1 Statement ("Pl.'s 56.1"), Dkt. 31, ¶¶ 14–17, 19–20.)

On the morning of April 28, 2016, Plaintiff reported to Headquarters. (Def.'s 56.1, ¶ 7; Deposition of Plaintiff ("Pl.'s Dep."), Dkt. 34-9, at ECF 595.) Because Plaintiff was supposed to report to GRVC that morning, he called his supervising investigator to inform him that he was at Headquarters instead. (Defendant's Affidavit & Declaration in Support of Motion for Summary Judgment ("Def.'s Aff. & Decl."), Dkt. 34-10, at ECF 597; Bardales Dep., Dkt. 33-9, at ECF 412.) At deposition, Plaintiff stated that he went to Headquarters on April 28, 2016 to speak with Gregory Kuczinski, Deputy Commissioner of DOC's Investigation Division,

---

controvert anything." (emphasis in original)). Additionally, to the extent a party's 56.1 statement "improperly interjects arguments and/or immaterial facts in response to facts asserted by [the opposing party] without specifically controverting those facts," the Court has disregarded the statement. *Risco v. McHugh*, 868 F. Supp. 2d 75, 87 n.2 (S.D.N.Y. 2012).

[2] "ECF" refers to the "Page ID" number generated by the Court's CM/ECF docketing system and not the document's internal pagination.

because I wanted to raise concerns about being told that I need to go to GRVC because of my gender, given the totality of the circumstances of what was going on. It was 10 minutes after misconduct, and then I am told, "Go here because of your gender." I wanted clarification and it fit well within [Kuczinski's open-door] policy to speak to him.

(Pl.'s Dep., Dkt. 33-7, at ECF 232–33.) The record is unclear as to what "misconduct" Plaintiff was referring to, but he indicated in his deposition that he observed an interaction between two DOC investigators named Bruce Sutton (Def.'s Aff. & Decl., Dkt. 34-8, at ECF 582) and Jasmine Sheinha (*id.* at ECF 506), a female investigator who was reassigned from GRVC to GMDC at the time of the events at issue in this case (Bardales Dep., Dkt. 33-9, at ECF 406). Specifically, Plaintiff stated:

> Well, when I was told the night before that I am going to be going to GRVC, they told me, "I am going to be left with no men out there." So I went home that night, and I noticed the paper that had everybody's—where everybody is going to go. And I knew that Jasmine [Sheinha] was put at GRVC. And I said to myself, "Well, this is interesting." And then I remembered that 10 minutes before Mr. Bardales came to bring me into this on the night of the 27th, there was misconduct between Bruce Sutton and Jasmine that I saw right in front of me. I couldn't believe it. I have the rules and directives memorized. I knew what we were supposed to do and what not to do. After I saw that, and [it] took place 10 minutes after D.C. Kuczinski went over his policy, "If something seems improper, if something seems off, do not keep it to yourself. It can make things worse. Come right to me. Open-door policy." And then he left, and 10 minutes later they are engaging in impropriety right in front of me.

(Pl.'s Dep., Dkt. 33-7, at ECF 215–16.)

Upon Plaintiff's arrival at Headquarters on the morning of April 28, 2016, Renee Lannaman—Kuczinski's executive assistant (Deposition of Renee Lannaman, Dkt. 33-12, at ECF 468)—informed Plaintiff that before he could speak with Kuczinski, he needed to first speak to Bardales and Ruben Benitez, Director of DOC's Investigation Division. (Pl.'s 56.1, ¶ 27; Pl.'s Dep., Dkt. 33-7 at ECF 214; Deposition of Ruben Benitez ("Benitez Dep."), Dkt. 33-8, at ECF 378–80.) Plaintiff then met with Bardales. (Pl.'s 56.1, ¶ 28.) In his deposition, Plaintiff summarized the meeting as follows:

Well, I went to go sit with [Bardales] and I told him about the impropriety, the misconduct that I saw . . . [b]etween Bruce Sutton and Jasmine. And I told him, "Something doesn't seem right with the proximity of things, that I was given this assignment 10 minutes later." And I said, "And something seems really improper about the reason why I am being given why I have to go down there." He said to me—he looked surprised. He said, "I don't know who this girl is or what you are talking about. I have nothing to do with this. [Benitez] told me to move you last night out of the blue at 4:00 for the reasons we discussed." He gesticulated toward Benitez's office. . . . He said, "So if you have any issues regarding this assignment, you are going to have to speak with him." Then he said, "So go find a seat, and I will let you know when he is ready for you." Essentially he told me he couldn't help me. At least that is my take on it.

(Pl.'s Dep., Dkt. 33-7, at ECF 233–34.) Bardales, for his part, characterized the meeting as follows:

[I] [c]alled him into my office, [he] took a seat. I asked him what happened, and he told me that a female during the training for two weeks was saying that she was going to be assigned to a team at headquarters, she will do whatever she can do [to] get assigned to headquarters. I asked him to identify who the investigator was, who the female was. He stated Jasmine, so I told him I had no knowledge of any complaint that Investigator Jasmine had during or after the training, that I solely made a decision to move him to the GRVC team and put Jasmine on the [GMDC team] because I need[ed] a male investigator on the GRVC team, because there was only one investigator at that time on the GRVC team, which was Investigator Bruson. He also stated he already told his in-laws, his family, his kids that he is going to be working for [GMDC]. As I was talking with him, he looked confused [about] what I was telling him and then he said to me that Lannaman must have [known] that the female was complaining, for whatever reason. I said, I reiterated to him I was the one that made the decision solely . . . for that one reason. I didn't know anything about complaints, whatever.

(Bardales Dep., Dkt. 33-9, at ECF 414.)

Later that day, Plaintiff met with Benitez, who instructed Plaintiff to accept his reassignment and promptly report to GRVC. (Pl.'s 56.1, ¶¶ 35–36; Pl.'s Dep., Dkt. 33-7, at ECF 249.) At deposition, Plaintiff recounted the meeting as follows:

[Benitez] started right off the bat saying something about [GMDC]. I don't remember what it was or in what context. But he mentioned something about [GMDC]. Then I told him that I just have concerns because—and I told him about the impropriety I saw right in front of me, and I said—I got out like half a thought. I just said, "The integrity of things," and he yelled at me. He like, literally barked at me, "The integrity of what?" Like loud. And that kind of shook me up a little

> bit. I figured I will just get to the issue and I said, "I am going to be the only man at the facility? So the one man is leaving, and I am going to be the only guy there?" He [held his hand out to one side] and said, "We found a need and filled the need." . . . He said, "You are male and you're the lowest guy on the totem pole. So go."

(Pl.'s Dep., Dkt. 33-7, at ECF 248–49.) Benitez recalled the meeting differently, describing it as follows in deposition:

> I brought [Plaintiff] into the office and asked him what was the issue with the assignment, and he proceeded to tell me that, "He had spent his entire educational career, studying to go and work in [GMDC]." Which I found odd. I asked him to explain that. He clarified that, "It is because he wants to work with the youth." And, I told him, "If that is the case and that is your concern, the youth are incarcerated in RNDC,[3] not [GMDC]." After that, he told me, "Well, I have already told everyone in my family I am going to work in [GMDC]. I don't understand why I am switched."

(Benitez Dep., Dkt. 33-8, at ECF 380.) Benitez stated that he could not remember anyone mentioning "integrity" during his conversation with Plaintiff, that he never told Plaintiff that DOC's Investigation Division "had a need and filled a need," and that he never told Plaintiff that he was "the lowest guy on the totem pole." (*Id.* at ECF 380–81.) Most significantly, Benitez denied that Plaintiff ever objected to the fact that the decision to reassign him was based on gender. (*Id.* at ECF 380.)

After his meeting with Benitez, Plaintiff reported to GRVC as instructed. (Pl.'s 56.1, ¶ 38.) Plaintiff subsequently called Bardales. (*Id.* ¶ 43.) During the phone call, Plaintiff informed Bardales that there was another male investigator at the GRVC facility, which confused Plaintiff because he was under the impression that he was transferred to GRVC because there were no other male investigators available to work there. (Pl.'s Dep., Dkt. 33-7, at ECF 261; Bardales Dep., Dkt. 33-9, at ECF 415.) Bardales told Plaintiff to contact Lannaman to schedule a meeting with

---

[3] The Robert N. Davoren Center—or "RNDC"—is a facility in which adolescent inmates are housed. (Defs.' Aff. & Decl., Dkt. 34-8, at ECF 580.)

Kuczinski. (Pl.'s 56.1, ¶ 44.) Plaintiff subsequently called Lannaman, who told Plaintiff to return to Headquarters. (Pl.'s Dep., Dkt. 33-7, at ECF 262; Def.'s Aff. & Decl., Dkt. 34-11, at ECF 599.)

In the meantime, Benitez and Kuczinski had a meeting at Headquarters in which they concluded that Plaintiff was not adaptable to change and was therefore not a "good fit" for employment as an investigator within DOC's Investigation Division. (Pl's 56.1, ¶¶ 52, 56–57; Benitez Dep., Dkt. 37-1, at ECF 666–67.) Benitez stated at deposition that he told Kuczinski that Plaintiff objected to the reassignment because Plaintiff "already told people" that he wanted to work at GMDC and because the physical conditions at GRVC were "uninhabitable," "horrible," or "something to that effect." (Benitez Dep., Dkt. 33-8, at ECF 385.) Lannaman, on behalf of Kuczinski, sent an email to DOC's Deputy Commissioner of Human Resources, requesting authorization for the Investigation Division to terminate Plaintiff's employment because he "has illustrated that he is not adaptable to change or any reorganization that would occur from time to time within [the] Investigation Division" and, as a result, they did not believe that Plaintiff would "adapt well" or be a "good fit." (Pl.'s 56.1, ¶ 59.)

Upon Plaintiff's return to Headquarters later on April 28, 2016, he met with Benitez and Bardales. (Id. ¶¶ 49, 54.) After meeting with Kuczinski again and obtaining paperwork from Human Resources, Benitez gave Plaintiff the option to resign[4] or be terminated. (Id. ¶¶ 55, 62.) At deposition, Benitez stated that he explained to Plaintiff that "based on the events of the morning, we were considering his refusal of his post with GRVC after speaking with Deputy Kuczinski."

---

[4] At deposition, Benitez explained that he gave Plaintiff the option of resigning because "[w]hen you get terminated with the City, you are not going to be able to obtain employment with the City again" and Benitez "didn't want to preclude [Plaintiff] from being able to gain employment." (Benitez Dep., Dkt. 33-8, at ECF 386.)

(Benitez Dep., Dkt. 33-8, at ECF 386.) At deposition, Plaintiff recalled the meeting somewhat differently, stating:

> [Benitez] showed me a piece of paper, and he said, "Resignation or termination." And he said, "We strongly consider that you sign this resignation, and if you don't we consider that you consider the severe consequences." Then he kind of leaned in and he said, "And there will be consequences." That shook me up, because of what Bardales just said to me outside the room.[5] So I made that connection, and I began to feel very scared. I started to get, like, numb and feeling a little nauseous.

(Pl.'s Dep., Dkt. 33-7, at ECF 285.) Plaintiff then asked to speak with a union representative and was given the opportunity to do so. (Pl.'s 56.1, ¶ 63.) Plaintiff also asked to call his wife to speak to her and was given the opportunity to do that as well. (*Id.* ¶ 64.) After Plaintiff refused to resign (*id.* ¶ 65), his employment was terminated that same day (Def.'s 56.1, ¶ 8; Def.'s Aff. & Decl., Dkt. 34-4, at ECF 513).

## II.    Procedural History

Plaintiff commenced this action on March 29, 2017, advancing retaliation claims against Defendant under Title VII (Complaint ("Compl."), Dkt. 1, ¶¶ 38–44), the NYSHRL (*id.* ¶¶ 45–49), and the NYCHRL (*id.* ¶¶ 50–55).[6] Discovery was completed on June 28, 2018. (*See* June 11, 2018 ECF Entry.) On November 2, 2018, Defendant filed a motion for summary judgment (Dkt. 28), which is currently before the Court.

## DISCUSSION

Summary judgment is appropriate where the submissions of the parties, taken together,

---

[5] Plaintiff represented that upon his return to Headquarters, Bardales told him "in sum and substance that we have never had anyone ask questions before," a statement that Plaintiff interpreted as possibly meaning that DOC's Investigation Division never had any investigator ask questions about assignments. (Pl.'s Dep., Dkt. 33-7, at ECF 280.)

[6] At a pre-motion conference held on August 2, 2018, Plaintiff clarified that he does not advance any independent gender discrimination claim. (Transcript of Pre-Motion Conference, Dkt. 39, at ECF 691.)

"show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986) (summary judgment inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law"). A dispute of fact is "genuine" if "the [record] evidence is such that a reasonable jury could return a verdict for the non[-]moving party." *Anderson*, 477 U.S. at 248.

The initial burden of "establishing the absence of any genuine issue of material fact" rests with the moving party. *Zalaski v. City of Bridgeport Police Dep't*, 613 F.3d 336, 340 (2d Cir. 2010). Once this burden is met, however, the burden shifts to the non-moving party to put forward some evidence establishing the existence of a question of fact that must be resolved at trial. *Spinelli v. City of New York*, 579 F.3d 160, 166–67 (2d Cir. 2009); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). A mere "scintilla of evidence" in support of the non-moving party is insufficient; "there must be evidence on which the jury could reasonably find for the non-movant." *Hayut v. State Univ. of N.Y.*, 352 F.3d 733, 743 (2d Cir. 2003) (brackets and quotation omitted). In other words, "[t]he non[-]moving party must come forward with specific facts showing that there is a genuine issue for trial." *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002) (quotation omitted).

When assessing whether a genuine issue of fact exists, the Court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 309 (2d Cir. 2008). The Court also construes any disputed facts in the light most favorable to the non-moving party. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157–59 (1970). However, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary

judgment." *Anderson*, 477 U.S. at 247–48.

## I.     Title VII Retaliation Claim

Title VII makes it unlawful "for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). As the Second Circuit has explained,

> Title VII's anti[-]retaliation provision prohibits an employer from discriminating against an employee for opposing any practice made unlawful by Title VII. To establish a *prima facie* case of unlawful retaliation under Title VII, an employee must show that (1) he was engaged in protected activity; (2) the employer was aware of that activity; (3) the employee suffered a materially adverse action; and (4) there was a causal connection between the protected activity and the adverse action.

*Rivera v. Rochester Genessee Reg'l Transp. Auth.*, 743 F.3d 11, 24 (2d Cir. 2014) (citations, quotation, and brackets omitted). Once a *prima facie* claim of retaliation is established, there is a "presumption of retaliation, which the defendant may rebut by articulating a legitimate, non-retaliatory reason for the adverse employment action." *Ya-Chen Chen v. City Univ. of N.Y.*, 805 F.3d 59, 70 (2d Cir. 2015) (quotations and brackets omitted). "If the defendant provides such an explanation, the presumption of retaliation dissipates," *id.* (quotation omitted), and "the plaintiff must prove 'that the desire to retaliate was the but-for cause of the challenged employment action,'" *id.* (quoting *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 352 (2013)).

The Court concludes that no reasonable jury could find that Plaintiff satisfies the first two elements of the *prima facie* test—that Plaintiff engaged in protected activity (the first element) and that the employer was aware of that activity (the second element). The Court, therefore, grants summary judgment to Defendant on this basis. *See Wang v. State Univ. of N.Y. Health Sci. Ctr. at Stony Brook*, 470 F. Supp. 2d 178, 189–90 (E.D.N.Y. 2006) (declining to address alternative

reason to dismiss claim where the court granted summary judgment to defendants on separate grounds).

### A.    Plaintiff Did Not Engage in Protected Activity

"Activity that is protected against retaliation includes not only formal complaints filed with an agency such as the EEOC, or commencing a lawsuit, but also internal complaints made to management." *Redfern-Wallace v. Buffalo News*, No. 12-CV-471 (LGF), 2016 WL 11481726, at *10 (W.D.N.Y. Mar. 9, 2016); *see Kotcher v. Rosa & Sullivan Appliance Ctr., Inc.*, 957 F.2d 59, 65 (2d Cir. 1992) ("[Plaintiff] had not filed a formal agency complaint before she was fired, but she did make an internal complaint to company management, protesting the sexually harassing actions of her supervisor. Surely this opposition to the unlawful practice of sexual harassment is protected activity within the policies of Title VII . . . ."). Moreover, "in order to recover for retaliation" for having complained of discrimination under Title VII, "the plaintiff need not prove that her underlying complaint of discrimination had merit." *Lore v. City of Syracuse*, 670 F.3d 127, 157 (2d Cir. 2012).

At the same time, however, "mere complaints of unfair treatment by an individual are not protected speech" under Title VII's anti-retaliation provision, because "unfair treatment by an employer does not [necessarily] implicate a public interest concern" addressed by Title VII. *Aspilaire v. Wyeth Pharm., Inc.*, 612 F. Supp. 2d 289, 308 (S.D.N.Y. 2009) (citing *Ezekwo v. N.Y.C. Health & Hosps. Corp.*, 940 F.2d 775, 781 (2d Cir. 1991)). Rather, the burden is on the plaintiff "to clarify to the employer that he is complaining of unfair treatment *due to his membership in a protected class* and that he is not complaining merely of unfair treatment generally." *Id.* at 308–09 (emphasis added).

Applying this standard, the Court holds that Plaintiff has failed to create a triable issue of fact as to whether he engaged in protected activity under Title VII's anti-retaliation provision.

Viewed in the light most favorable to Plaintiff, the circumstances surrounding Plaintiff's complaint about his treatment are as follows.   On April 26, 2016, Plaintiff was assigned to work as a Provisional Investigator at GMDC. (Pl.'s 56.1, ¶ 6.) On April 27, 2016, Plaintiff was reassigned to GRVC because Plaintiff is male and GRVC needed a male investigator to address complaints of male inmates related to sexual harassment and assault.   (Def.'s 56.1, ¶ 5; Pl.'s 56.1, ¶¶ 14–17, 19–20.)  Disappointed in this reassignment, Plaintiff went to Headquarters on the morning of April 28, 2016 because he was suspicious about the temporal proximity between his reassignment and inappropriate conduct that he witnessed between two DOC investigators, one of whom is female and was reassigned from GRVC to GMDC around the same time that Plaintiff was reassigned from GMDC to GRVC. (Pl.'s Dep., Dkt. 33-7, at ECF 215–16; Bardales Dep., Dkt. 33-9, at ECF 406.)

Upon his arrival to Headquarters, Plaintiff told Bardales that "[s]omething seems really improper about the reason" he was given for his reassignment, *i.e.*, that GRVC required an additional male investigator to address male inmates' complaints about sexual harassment and assault. (Pl.'s Dep., Dkt. 33-7, at ECF 233–34.) At a subsequent meeting with Benitez, Plaintiff tried to confirm the reason he was given for his reassignment by asking whether he would in fact be the only male investigator at GMDC. (*Id.* at ECF 248–49.) Dismissing Plaintiff's concerns, Benitez told Plaintiff that he had to report to GRVC pursuant to his reassignment because he is male and is "the lowest guy on the totem pole."[7]  (*Id.*; Pl.'s 56.1, ¶¶ 35–36.) After reporting to GRVC as instructed, Plaintiff was told to return to Headquarters. (Pl.'s Dep., Dkt. 33-7, at ECF 262; Def.'s Aff. & Decl., Dkt. 34-11, at ECF 599.) Plaintiff subsequently met with Benitez

---

[7] Though Benitez disputes Plaintiff's account of the conversation, the Court—for purposes of Defendant's motion—construes the facts in the light most favorable to Plaintiff as the non-moving party.

and Bardales, who told Plaintiff that he had to resign or else there would be "severe consequences." (Pl.'s Dep., Dkt. 33-7, ECF 285.) Plaintiff's employment was terminated shortly thereafter. (Def.'s 56.1, ¶ 8; Def.'s Aff. & Decl., Dkt. 34-4, at ECF 513.)

Simply put, no reasonable jury could examine these facts and conclude that Plaintiff complained to his employer about his reassignment because he reasonably believed that he had been subjected to unlawful sex discrimination under Title VII. As the Second Circuit has advised,

> [a]n employee's complaint may qualify as protected activity, satisfying the first element of [the plaintiff's *prima facie* retaliation claim], so long as the employee has a good faith, reasonable belief that the underlying challenged actions of the employer violated the law. And not just any law—the plaintiff is required to have a good faith, reasonable belief that she was opposing an employment practice made unlawful by Title VII. . . .
>
> A plaintiff's belief on this point is not reasonable simply because he or she complains of something that appears to be discrimination in some form. For example, when a hospital administrator asserted that he had been terminated after complaining that a white employee had been chosen over qualified black and other minority applicants, we held that the administrator failed to make out a *prima facie* case because his objections at the time neither pointed out discrimination against particular individuals nor discriminatory practices by the employer and were thus directed at something that, as it was alleged, is not properly within the definition of an unlawful employment practice.

*Kelly v. Howard I. Shapiro & Assocs. Consulting Eng'rs, P.C.*, 716 F.3d 10, 14–15 (2d Cir. 2013) (quotations, citations, and alterations omitted).

Based on Plaintiff's own testimony, it is clear that the reason he complained to his supervisors about his reassignment to GRVC was not that he believed he was the victim of gender discrimination, but because he believed that the rationale provided for his reassignment, *i.e.*, that GRVC lacked a sufficient number of male investigators to handle male inmates' claims of sexual harassment and assault, was (1) pretext for some other nefarious, inappropriate purpose, *e.g.*, that his supervisors were trying to silence him with regard to the "misconduct" he witnessed between Bruce Sutton and Jasmine Sheinha; (2) rested on a misapplication of DOC policy; and/or (3) was

simply a specious ground on which to reassign Plaintiff. Accordingly, the Court concludes that there is insufficient evidence in the record to permit a reasonable jury to find that Plaintiff engaged in protected activity under Title VII's anti-retaliation provision. *See Marcus v. Leviton Mfg. Co.*, No. 15-CV-656 (SJF) (GRB), 2016 WL 74415, at *6 (E.D.N.Y. Jan. 6, 2016) (dismissing retaliation claim where the male plaintiff "ha[d] not alleged any facts to indicate that a legally unsophisticated employee would have a good faith, reasonable belief that complaints about the [d]efendant's preferential treatment of [a female co-worker] constituted discrimination based on gender" (quotation and alterations omitted)); *Aspilaire*, 612 F. Supp. 2d at 309–10 (holding that the plaintiff failed to demonstrate she engaged in protected activity where she did not specifically remember telling her employer that "she felt like she was being treated unfairly because she was black" (quotation and brackets omitted)); *Int'l Healthcare Exch., Inc. v. Global Healthcare Exch., LLC*, 470 F. Supp. 2d 345, 357 (S.D.N.Y. 2007) ("Complaints about conduct clearly prohibited by the statute need not mention discrimination or use particular language. However, ambiguous complaints that do not make the employer aware of alleged discriminatory misconduct do not constitute protected activity." (citation omitted)).

### B.     Plaintiff's Employer Was Not Aware of Any Protected Activity

Moreover, the Court concludes no reasonable jury could find that Plaintiff's employer was aware that Plaintiff engaged in any protected activity—the second element of the *prima facie* test. The record is replete with evidence suggesting that Bardales, Benitez, and Kuczinski were under the impression that Plaintiff objected to his reassignment for reasons besides the fact that it was partially based on Plaintiff's gender. (*See* Bardales Dep., Dkt. 33-9, at ECF 414 (explaining that Plaintiff "stated he already told his in-laws, his family, [and] his kids that he is going to be working for [GMDC]"); Benitez Dep., Dkt. 33-8, at ECF 380 (explaining that Plaintiff preferred GMDC to GRVC because he wanted to "work with the youth"); *id.* at ECF 385 (explaining that Plaintiff

objected to his GRVC assignment because the conditions there were "uninhabitable," "horrible," or "something to that effect"). Though Plaintiff did complain to his supervisors, after going to GRVC, that the facility already had a male investigator, this complaint was not directed at an alleged practice of gender discrimination, but rather at the stated justification for the reassignment—namely, that GRVC needed more male investigators. Indeed, an employer may, in certain limited circumstances, consider gender in making job assignments where the employee's gender is relevant to his or her duties without running afoul of Title VII. *See Westchester Cty. Corrs. v. Cty. of Westchester*, 346 F. Supp. 2d 527, 533 (S.D.N.Y. 2004) ("Under § 703(e)(1) of Title VII, an employer may discriminate on the basis of 'religion, sex, or national origin in those certain instances where religion, sex, or national origin is a *bona fide* occupational qualification reasonably necessary to the normal operation of that particular business or enterprise.'" (quoting 42 U.S.C. § 2000e-2(e)(1)).

In the absence of any evidence adduced by Plaintiff suggesting that anyone above him in the chain of command at DOC's Investigation Division understood Plaintiff to be complaining about his reassignment on the grounds that it constituted gender discrimination under Title VII, the Court holds that Plaintiff has failed to establish the second element of his *prima facie* case to overcome Defendant's entitlement to summary judgment. *See Kelly*, 716 F.3d at 15–16 (holding that the plaintiff's retaliation claim "founders on both the first and second requirements of the *prima facie* test" because "there is no indication either that [the plaintiff] herself possessed a good-faith belief that she was complaining of conduct prohibited by Title VII or that her employers could have understood her complaints in this way"); *Rojas v. Roman Catholic Diocese of Rochester*, 660 F.3d 98, 107 (2d Cir. 2011) (affirming dismissal of retaliation claim where "[t]he competent evidence in the record showed that any complaints [the plaintiff] made were generalized

and therefore the [employer] could not reasonably have understood that she was complaining of conduct prohibited by Title VII" (quotation omitted)); *Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp.*, 136 F.3d 276, 292 (2d Cir. 1998) ("[I]mplicit in the requirement that the employer have been aware of the protected activity is the requirement that it understood, or could reasonably have understood, that the plaintiff's opposition was directed at conduct prohibited by Title VII.").

## II.    NYSHRL & NYCHRL Retaliation Claims

In light of the Court's dismissal of Plaintiff's sole federal claim in this action, the Court "declines to exercise supplemental jurisdiction over Plaintiff's NYSHRL and NYCHRL" retaliation claims, which are "therefore dismissed without prejudice." *Missick v. City of New York*, 707 F. Supp. 2d 336, 354–55 (E.D.N.Y. 2010); *see also Delaney v. Bank of Am. Corp.*, 766 F.3d 163, 170 (2d Cir. 2014) ("In general, where the federal claims are dismissed before trial, the state claims should be dismissed as well." (quotation omitted)).

## CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment is granted, and the complaint is dismissed in its entirety. The Clerk of Court is respectfully directed to enter judgment and close this case.

SO ORDERED.

/s/ Pamela K. Chen
Pamela K. Chen
United States District Judge

Dated:   June 21, 2019
              Brooklyn, New York